■ In the Matter of the Claim of LOTTIE M. DUNN, Appellant, v. H. A. COLLMAN ELECTRIC CO., INC., et al., Respondents. WORKMEN'S COMPENSATION BOARD, Respondent.— Decedent, a construction electrician, shortly after climbing the stairs to the top of a 12-story building and descending them and immediately climbing the stairs to the top of a 7-story building and descending them, complained of chest pain and was immediately taken to a hospital where he was pronounced dead on arrival. His body was seen there by Dr. Del Giacco, a physician who had previously attended him, who reported the cause of death as " probable myocardial infarction " and further stated that the exertion of walking up 12 flights of stairs (the actual number was 19) " could have [sic] a contributing factor in the myocardial infarction "; all this from the physician's report printed in the record and certified by the secretary of the board to have been before it but apparently overlooked in the board's decision hereinafter quoted, although the carrier's counsel expressly referred to it in arguing before the board panel the supposed insufficiency of Dr. Del Giacco's mode of expression. The only other medical evidence respecting causation was adduced from Dr. Harris who said that " it is possible " that the exertion of climbing and descending some 19 floors in all " might have contributed " to decedent's myo-

cardial infarction and death. Asked as to "possibility", he said "No, my answer is definite"; but, in any event, his opinion, as expressed, was competent proof of causal relation, as was that of Dr. Del Giacco. (*Matter of Ernest* v. *Boggs Lake Estates*, 12 N Y 2d 414.) Nevertheless, the board said in its original memorandum of decision that the "medical evidence introduced indicates the said fatal infarction was not in any way due to the work activities" and in an amended memorandum of decision said that the "medical evidence introduced indicates the infarction was not due to the described work activities." This holding is factually erroneous in that it overlooks Dr. Del Giacco's report; but even if that report be excluded, the holding is erroneous in the effect obviously given to the testimony of Dr. Harris. Dr. Harris said that for his opinion to be valid, one of two premises must exist, that the work be unusual or that it be performed under unusual pressure. Asked to assume that for nine months preceding his death decedent "had to go by foot anywheres from the first to the twelfth floor", on many occasions with heavier loads, the doctor said, "If these are the facts that are substantiated it would appear that the amount of work on the day of death was not unusual." This does not seem to us an unequivocal retraction of the doctor's opinion of causation. Further, the record is clear that "on the day of death" the exertion was far greater than the maximal degree of the effort under the vague assumption propounded by the cross-examiner. Finally, this is not affirmative medical proof, as the board's above-quoted finding would have it, that "the infarction was not due to the described work activities". It seems proper to note that the board's original memorandum decision contained the patently erroneous finding that the work of climbing and descending a total of 19 stories had been performed by decedent "every day for nine months", while in the amended memorandum it is stated that this work was required "every fourth week". The exertion actually expended is described in the uncontradicted evidence of the employer's foreman. Indeed, his testimony stressed the unusual nature of the work of climbing and descending a total of 19 stories in 45 minutes, so as to check and replace light bulbs, that effort being required because, for a particular reason, elevators could not be supplied until a later time. Because this seemingly strenuous work was an added chore, it was rotated among all the electricians, being done before the day's work on the construction commenced and being compensated for at double pay. According to his foreman, decedent had covered the two buildings in this way "Possibly once or twice before that", while his usual duties consisted of the apparently light work of pulling wire into conduits and putting in receptacles and switches. The climbing required of all workers on this job rendered it, in the foreman's words, "One of the worst kind of jobs we were on  *  *  * It's never happend before to me." It was for the board to evaluate, and, if it chose, to reject the medical evidence of causation, but the difficulty here is that the board's findings do not indicate that it has done either but instead erroneously state that the medical evidence is against causal relation. Dr. Harris may have been entitled to evaluate the work as not unusual in the light of his own medical definition and therefore, in his medical theory, as of no causative effect, but it is far from clear that he did so; nor has the board clearly found that he did so. The decision being factually erroneous and legally insufficient, remittal is required. Decision reversed and matter remitted, with costs to appellant. Gibson, P. J., Herlihy, Reynolds, Taylor and Aulisi, JJ., concur.